[Crim. No. 4579.   First Dist., Div. Two.   Jan. 14, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. MAE FRANCES OWENS et al., Defendants and Appellants.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

Allen & Perry and Claude O. Allen for Defendants and Appellants.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., and Michael J. Phelan, Deputy Attorneys General, for Plaintiff and Respondent.

SHOEMAKER, P. J.—Defendants Mae Frances Owens and Walter C. Owens were charged by information with two counts of grand theft, each count involving the unlawful taking of money from the County of Alameda. Additionally, defendant Mae Frances Owens was charged with two counts of violating Welfare and Institutions Code, section 1550.

After a trial without jury, each defendant was found guilty as charged, and thereafter the court suspended sentence for a period of three years and placed defendants on probation subject to certain terms and conditions.

Defendants filed notice of appeal from "the final judgment of conviction rendered September 27, 1963 and sentence pronounced on October 25, 1963 . . . ."

No judgment was rendered on September 27, 1963, hence the purported appeal therefrom must be dismissed. ██ The order of October 25, 1963, suspending sentence and granting probation is appealable. (Pen. Code, § 1237; *People* v. *Robinson* (1954) 43 Cal.2d 143, 145 [271 P.2d 872].)

The evidence presented at the trial developed that Walter and Mae Frances Owens were married on September 6, 1959. Mrs. Owens had four children, all by her marriage to one Terry Williams. This marriage was dissolved in 1958. Although child support was awarded, Williams never complied with the order. When she married Owens, she was receiving Aid to Needy Children in Fresno County.

During September, Mr. and Mrs. Owens and the four children moved into a home owned by Mr. Owens and located in Oakland. On December 8, 1959, Bertha Oltmanns, a social worker employed by the Alameda County Welfare Department, visited the Owens home in response to a letter from the Fresno County Welfare Department concerning the transfer of the Owens' needy children's assistance from Fresno to Alameda County. During the course of this visit, Mrs. Oltmanns told Mr. and Mrs. Owens that she had received information from Fresno County indicating that the Owens were not eligible for aid during the month of November 1959 because Mr. Owens' income for that month was sufficient to cover the family's needs. Mr. Owens then stated that although he had reported his income to Fresno County, he did not feel that

a stepfather ought to be held liable for the support of his wife's children.

On January 5, 1960, Mr. and Mrs. Owens went to the office of the Alameda County Welfare Department and provided Mrs. Oltmanns with wage stubs reflecting Mr. Owens' earnings during the period from December 5 through 26, 1959. Mr. Owens also informed her of his various expenses and financial obligations. On the basis of this information, Mrs. Oltmanns then prepared a needy children's budget in accordance with a cost schedule and Aid to Needy Children manual issued by the State Department of Social Welfare, which resulted in a grant of $40.

On February 5, 1960, Mrs. Owens filled out and signed under oath an application for Aid to Needy Children. She stated therein that Mr. Owens had earned a total of $450 during the preceding three months. She also filled out and signed under oath a "Supplemental Statement" to the effect that Mr. Owens' approximate monthly income was $244.27. On the basis of this information, she received a grant of $212 for the month of February 1960. Mrs. Owens was asked to keep all wage stubs and to maintain a week-by-week record of Mr. Owens' earnings. The Owens family began receiving aid from Alameda County effective February 1, 1960.

During the period from June 1, 1960, through October 6, 1961, Mrs. Aitken was assigned to the Owens case. She prepared monthly budgets based upon the amount of income reported by Mr. and Mrs. Owens.

On August 11, 1960, Mr. and Mrs. Owens came to the welfare department office, and Mrs. Aitken discussed budgeting procedures and explained the welfare department ruling that a stepfather was liable for the support of his wife's children insofar as he was able. On several occasions thereafter, Mrs. Owens was advised of the stepfather liability procedures.

The aid continued because both Owens at various times misrepresented Mr. Owens' income by giving information to the department that it was less than it actually was.

Finally, Mrs. Cartwright was assigned to the Owens case. After checking the payroll records of Mr. Owens' employer, the Pacific Maritime Association, and ascertaining the total amount of disability insurance payments received by Mr. Owens, she recomputed the Owens' needy children's budget on the basis of the actual income received. She testified that they had received overpayments in the total amount of $1,048.32 during the period from February 1960 through January 1961,

and overpayments in the total amount of $1,261 during the period from February 1961 through January 1962.

On January 8, 1963, Mrs. Cartwright went to the Owens home and questioned Mrs. Owens concerning the renewal applications which she had signed on January 18, 1961, and January 12, 1962. Mrs. Owens identified her handwriting and signatures, but stated that she had reported all the income which her husband had told her about. Mr. Owens then admitted that he had not told his wife or the welfare department about all his income.

Mr. Owens testified that he and his wife had agreed, prior to their marriage, that he would pay off his existing obligations before contributing to the support of her children. He admitted that he did not report all his income but reported only what was left after he had paid his bills. He denied that he had ever concealed from his wife the fact that he was working.

Mrs. Owens testified that she always reported all the income which her husband told her about. She admitted, however, that she knew that her husband had worked more hours than were indicated by the wage stubs which she reported. Although she understood that she was required to report all of her husband's income, she reported only what he instructed her to report even when she knew that he had actually received more. She confirmed the fact that she and her husband had agreed, prior to their marriage, that he would not contribute to the support of her children until he had paid his other bills and obligations.

■ Appellants first contend that the budgeting formula used by the Alameda County Welfare Department conflicts with Welfare and Institutions Code, section 1508, which provides in relevant part as follows: ''Where a needy child . . . lives with his mother and a stepfather or an adult male person assuming the role of spouse to the mother . . . the amount of the grant . . . shall be computed after consideration is given to the income of the stepfather or such adult male person. The county granting aid shall determine if the stepfather or such adult male person is able to support the child either wholly or in part. Said determination shall be based upon a standard which takes into account the stepfather's or such adult male person's income and expenses under regulations set forth by the State Board of Social Welfare.'' Appellants assert that the term ''expenses,'' as used in section 1508, means *all* of the stepfather's expenses. They contend that a budget which allowed them a fixed sum of $175

per month to cover their living expenses, $50 per month for transportation costs, $70 per month for overhead housing expenses, and $57.79 per month for car payments, is necessarily in conflict with section 1508 because appellant Walter Owens testified that he actually had various other expenses which were not separately allowed by the Alameda County Welfare Department. We do not agree.

It is apparent that if section 1508 were designed to afford a stepfather credit for each and every expense incurred by him, there would have been no reason for the Legislature to delegate to the State Board of Social Welfare the power to specify by regulations what expenses should be taken into account. We have no doubt that if appellants' interpretation of the statute were accepted, children living with a stepfather earning an unlimited income would still be eligible for county aid, for that income would be spent in alleged expenses of one kind or another. Appellants concede that the Alameda County Welfare Department computed appellants' monthly budget in strict compliance with the applicable regulations promulgated by the State Board of Social Welfare. Those regulations clearly cannot be deemed in conflict with Welfare and Institutions Code, section 1508, merely because they provide for fixed allowances.

█ Appellants next assert that the budgeting formula is invalid because violative of the second paragraph of Welfare and Institutions Code, section 1508, which provides as follows: ''Notwithstanding the provisions of Section 209 of the Civil Code, a stepfather or such adult male person is bound to support, if able to do so, his wife's children if without support from such stepfather or adult male person they would be needy children eligible for aid under this chapter. However, such liability for support shall not exceed the wife's community property interest in his income.'' Appellants reason that since the budgeting formula used by the Alameda County Welfare Department took appellant Walter Owens' entire net income into consideration in determining the amount of the grant to be given his stepchildren, said formula ignored the community property limitation of section 1508. The record does not support this argument.

Although the budgeting formula in question took appellant Walter Owens' entire net income into consideration in determining the amount of aid to be granted his stepchildren, the record contains no evidence that the ''stepfather liability'' arrived at in any given month was ever in excess of his wife's

community property interest in his income. ▮ There is a presumption that official duty has been regularly performed (Code Civ. Proc., § 1963, subd. 15; *Patten* v. *County of San Diego* (1951) 106 Cal.App.2d 467, 470 [235 P.2d 217]), hence the Alameda County Welfare Department cannot be presumed to have utilized a budgeting formula which did not fully comply with the community property limitations of Welfare and Institutions Code, section 1508.

▮ Appellants' contention that the formula required appellant Walter Owens to support his wife's children in violation of Civil Code, section 209, is similarly lacking in merit. In *People* v. *Rozell* (1963) 212 Cal.App.2d 875 [28 Cal.Rptr. 478], it was argued that Welfare and Institutions Code, section 1508, was unconstitutional in that it deprived an adult male person, assuming the role of spouse, of his property without due process of law. The court stated: ''The statute does not deprive the adult male of his property. It merely states in the portion with which we are concerned that if an adult male assumes the role of a spouse his income shall be taken into consideration in determining the amount of the grant. The purpose of such regulation or enactment is to administer the program fairly and to safeguard public funds. It is a reasonable device to determine the needs of a child. It is based on the assumption that a man assuming the role of a spouse will contribute to the support of the mother and her children. It takes nothing from him. It merely requires that his income be considered.'' (P. 878.) In the present case, the budgeting formula which merely took appellant Walter Owens' income into consideration in determining the needs of his stepchildren neither deprived him of said income nor required him, contrary to Civil Code, section 209, to support those children.

▮ Appellants next contend that the budgeting formula is invalid in that it deprives a stepfather of management and control of the community property in violation of certain Civil Code sections. Here again, appellants rely upon the premise that the formula in question compelled appellant Walter Owens to support the children of another man regardless of his intention not to do so. Said premise, as above noted, is erroneous.

▮ Appellants' final contention is that the evidence was insufficient to support a finding that appellant Mae Frances Owens knowingly made false statements to the Alameda County Welfare Department. Appellants ignore the fact that

she admitted that she knew he worked more hours than were indicated by the wage stubs which she reported, that she was fully aware that she was required to report all his income, but that it was her practice to report only what he instructed her to report even when she knew that he had actually received more. No other evidence was needed to support a finding of knowing misrepresentation.

The appeal from the alleged judgment of September 27, 1963, is dismissed. The order of October 25, 1963, granting probation, is affirmed.

Agee, J., and Taylor, J., concurred.